# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LAWRENCE LEVY, CEDRIC HAMMOND, BRADLEY CASTO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> VS. <br><br> LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, JAMES LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, <br><br> Defendants. | **COMPLAINT-CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiffs Lawrence Levy, Cedric Hammond, and Bradley Casto, individually and on behalf of all others similarly situated, hereby allege as follows:

### INTRODUCTION

1. Nearly a decade ago, the U.S. Department of Justice investigated the Louisiana Department of Public Safety and Corrections (the "LDPSC") for failure to provide auxiliary aids and services to prisoners under its control and supervision whenever necessary to ensure effective communication with individuals who are deaf or have hearing impairments, *i.e.*, qualified individuals with disabilities. That investigation led to a 2008 Resolution Agreement that established procedures to provide auxiliary aids and services to these prisoners.

2. The Resolution Agreement does not, however, address probationers and parolees and, to this day, the LDPSC does not take appropriate steps to ensure that communications with

probationers and parolees who are deaf or have hearing impairments are effective, including furnishing adequate and appropriate auxiliary aids and services, in violation of Title II of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act").

3. Plaintiffs are probationers and parolees who are deaf or have hearing impairments and who are under the control and supervision of the LDPSC and its Secretary, James LeBlanc ("LeBlanc") (collectively, "Defendants"). While on probation and/or parole, Plaintiffs must comply with certain terms and conditions imposed on them, or be subject to punishment, including an extension of their probation or parole, or incarceration.

4. Plaintiffs have been unable to comply with all of the terms and conditions of their probation and/or parole, or to participate meaningfully in Defendants' programs, because Defendants have not ensured effective communications with Plaintiffs by providing the requisite auxiliary aids and services, *e.g.*, American Sign Language ("ASL") interpreters: (a) when the terms and conditions of their probation and/or parole are initially discussed with them; (b) during Plaintiffs' required meetings with their probation and/or parole officers; (c) during random, unannounced home inspections by Plaintiffs' probation and/or parole officers; and (d) during required post-release counseling or other educational classes.

5. Because Defendants have not made available the requisite auxiliary aids and services during such times, Plaintiffs have had no choice but to resort to trying to communicate: (a) orally or through written notes even though they have very limited English speaking and writing skills, and (b) through unqualified interpreters such as other probationers/parolees or prisoners. As a consequence, Plaintiffs often have very little, if any, understanding of what transpired at these meetings, inspections and classes.

6. Plaintiffs have repeatedly informed LDPSC officials of their disabilities and corresponding limitations, yet Defendants have inexplicably denied Plaintiffs the requisite auxiliary aids and services.

7. Thus, as detailed more fully below, Defendants have violated and continue to violate the ADA and the Rehabilitation Act, which prohibit public entities from discriminating against people with disabilities on the basis of disability.

## JURISDICTION AND VENUE

8. This action arises under the ADA and the Rehabilitation Act.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

10. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(3), which confers jurisdiction on district courts to hear cases involving a deprivation of rights claim.

11. This Court has personal jurisdiction over the LDPSC because it is domiciled in Baton Rouge, Louisiana. *See* La. Rev. Stat. Ann. § 36:401.

12. This Court likewise has personal jurisdiction over Secretary LeBlanc because he works at the LDPSC, which is domiciled in Baton Rouge, Louisiana, and he has significant contacts with Baton Rouge, Louisiana.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because the LDPSC is domiciled in Baton Rouge. *See* La. Rev. Stat. Ann. § 36:401. Venue also is proper pursuant to 28 U.S.C. § 1391(b)(2) because many of the events complained of occurred in this district, Plaintiffs Lawrence Levy and Cedric Hammond reside in Baton Rouge, Louisiana, and all of their home and office visits have taken place in Baton Rouge, Louisiana.

## PARTIES

14. Plaintiff Lawrence Levy ("Mr. Levy") is a parolee who has a hearing impairment and resides in Baton Rouge, Louisiana. In 2013, he was released from Rayburn Correctional Center ("RCC") in Washington Parish, Louisiana, and commenced an eight-year parole requirement under the control and supervision of the LDPSC. He is a qualified individual with a disability, as that term is used and defined in the ADA and the Rehabilitation Act.

15. Plaintiff Cedric Hammond ("Mr. Hammond") is a parolee who has a hearing impairment and resides in Baton Rouge, Louisiana. In 2002, he was released from prison and commenced his parole under the control and supervision of the LDPSC. Mr. Hammond returned to prison in 2006 for a parole violation. He was again released on parole in 2013 from RCC in Washington Parish, Louisiana, and commenced his parole under the control and supervision of the LDPSC. He is a qualified individual with a disability as that term is used and defined in the ADA and the Rehabilitation Act.

16. Plaintiff Bradley Casto ("Mr. Casto") is a probationer who has a hearing impairment and resides in West Monroe, Louisiana. In January 2015, Mr. Casto commenced a four-year probation requirement under the control and supervision of the LDPSC. He is a qualified individual with a disability as that term is used and defined in the ADA and the Rehabilitation Act.

17. Defendant LDPSC is a subdivision of the State of Louisiana, which oversees the state prison system and parolees and probationers of that system. The LDPSC is a public entity as that term is used and defined in the ADA. By virtue of its acceptance of funding from various federal agencies, it is a recipient of federal financial assistance, as that term is used and defined in the Rehabilitation Act.

18. Defendant Secretary LeBlanc is the Secretary of the LDPSC, which is a position in the Governor of Louisiana's cabinet appointed by the Governor.

**FACTUAL ALLEGATIONS**

19. The LDPSC consists of several departments, including the Louisiana Department of Corrections Services (the "DOC"). The DOC is further divided into divisions, including the Division of Probation and Parole (the "DPP"). The DPP oversees the custody and care of adult offenders, including individuals on probation and parole. The DPP and DOC are overseen by Secretary LeBlanc.

20. DPP officers are charged with ensuring that probationers and parolees abide by the conditions of supervision, identifying problems and solutions, making appropriate referrals, providing general counseling, and performing arrests as needed to protect public safety. DPP officers carry out their duties by visiting offenders in their homes, at work, other places in the community, and in the offices of the DPP officers.

21. As probationers and parolees, Plaintiffs are, among other things, required to appear for office visits; subjected to random, unannounced home inspections; and required to attend post-release counseling and other educational classes.

22. Defendants have failed to ensure that communications with probationers and parolees who are deaf or have hearing impairments are as effective as communications with other probationers and parolees. Defendants have thus denied Plaintiffs an equal opportunity to successfully complete their probation and parole and to effectively participate in post-release rehabilitative programs. Among other things, because Plaintiffs are not afforded the requisite auxiliary aids and services to comply with their probation and parole requirements they face the risk of having been found – and in fact at least one Plaintiff has been found – to have violated

their probation and/or parole.

**Lawrence Levy**

23. Mr. Levy is 51 years old and currently resides in Baton Rouge, Louisiana. He has been virtually deaf since the age of seven, and ASL is his primary language. He did not complete high school and has difficulty speaking, reading, and writing English. Mr. Levy was incarcerated for seventeen years and was released in 2013 from RCC in Washington Parish, Louisiana. He then commenced an eight-year parole requirement. After Mr. Levy was granted parole, he attended a meeting where he was required to sign documents related to his parole. There was no interpreter at the meeting and his limited ability to comprehend written English prevented him from fully understanding the documents.

24. ASL is the most effective means of communication for Mr. Levy, particularly when new or complicated information is being presented or discussed. Except for simple transactions, Mr. Levy must use sign-language interpretation to converse with others.

25. Mr. Levy has had several dozen office and home visits with his parole officer in Baton Rouge, Louisiana. He has not had an interpreter at the majority of these meetings even though he has repeatedly requested that an interpreter be present. Instead, he was forced to try to communicate through written notes. Mr. Levy was told by his parole officer that if he needed an interpreter at office visits he would have to bring his own interpreter with him.

26. Mr. Levy is unable to communicate effectively, either receptively or expressively, through written notes.

27. As a condition of his parole, Mr. Levy was required to attend classes. When he first tried to attend these mandatory classes, there were no interpreters in attendance and he was instructed to go home. More recently, there has been an attempt to provide sign language

interpretation at the classes through video remote interpreting services with inmate interpreters. However, these services have been ineffective and inadequate to allow him to understand and be understood. The inmate interpreters' sign language skills are basic, it is difficult to see the interpreters, and there are frequent problems with the internet.

**Cedric Hammond**

28. Mr. Hammond is 56 years old and currently resides in Baton Rouge, Louisiana. He has been deaf since birth, and ASL is his primary language. ASL is the most effective means of communication for Mr. Hammond, particularly when new or complicated information is being presented or discussed. Except for simple transactions, Mr. Hammond must use sign-language interpretation to converse with others.

29. After serving over twelve years in prison in Louisiana, Mr. Hammond was released in 2002, and commenced his parole.

30. Mr. Hammond returned to prison in 2006 for a parole violation, and was released on parole in 2013 from RCC in Washington Parish, Louisiana. Mr. Hammond subsequently had a brief meeting at the Probation and Parole district office in Baton Rouge, Louisiana. He received paperwork related to his parole, but no interpreter was present and the terms and conditions of his parole were never explained to him in a manner that he could reasonably understand.

31. In or around October 2014, the DPP determined that Mr. Hammond violated his parole and he spent ten days in jail for the alleged parole violation although he was unaware that he was allegedly violating his parole because the terms and conditions of his parole were never adequately explained to him.

32. Mr. Hammond has had several dozen office and home visits with his parole

officer in Baton Rouge, Louisiana. He has not had an interpreter at the majority of these meetings. He was told by his probation officer that interpreters are too expensive. Mr. Hammond was forced to try to communicate through written notes, although he has a very limited understanding of written English.

33. Mr. Hammond also is required to pay for and attend monthly classes in which unqualified inmate interpreters are provided through video remote interpreting. He often does not understand what is being taught.

**Bradley Casto**

34. Mr. Casto is 29 years old and currently resides in West Monroe, Louisiana. He was born 100% deaf in his left ear, lost 90% of the hearing in his right ear at age 5, and can only communicate effectively through ASL. Mr. Casto has a very limited vocabulary and knowledge of English.

35. In January 2015, Mr. Casto commenced a four-year probation requirement. Mr. Casto reviewed the terms of his probation with a probation officer, but there was no interpreter at this meeting and he was required to try to communicate orally.

36. Mr. Casto's probation officer visited his house without an ASL interpreter and entered the house after a young child opened the door. Mr. Casto was awakened while in bed by the probation officer, who then attempted to communicate with him orally.

37. The terms of Mr. Casto's probation require that he attend classes, but the LDPSC has refused to provide interpreters for standard group sessions. He is thus forced to pay for and attend one-on-one sessions twice per month where he has to try to communicate orally with an instructor.

38. Since his release from prison, Mr. Casto has had several dozen office and home

visits with his probation officer in West Monroe, Louisiana. There has never been an interpreter present during the meetings. Mr. Casto was forced to try to communicate through oral communication although he has very limited hearing and a very limited understanding of English.

**Department of Justice Investigation**

39. In 2008, after being prompted by the U.S. Department of Justice to investigate the adequacy of services provided to individuals under its control and supervision who were deaf or had hearing impairments, the LDPSC entered into a Resolution Agreement Between the United States Department of Justice, Office of Justice Programs and the LDPSC ("Resolution Agreement"). The purpose of the Resolution Agreement was to establish procedures to provide auxiliary aids and services to inmates under its control and supervision whenever necessary to ensure effective communication with qualified individuals with disabilities.

40. Although Defendants have begun implementing these changes for prisoners who are deaf or have hearing impairments, probationers and parolees who are deaf or have hearing impairments have been routinely denied auxiliary aids and services.

41. The Resolution Agreement specifically states that even when inmate interpreters are properly trained, "impartiality concerns remain," and that "in many – if not most – situations, inmate interpreters should not be used." The same language is contained in LDPSC regulations.

## CLASS ALLEGATIONS

42. **Class Definition.** Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1) and (b)(2) on behalf of the following class (the "Class"):

> All present and future probationers and parolees who are deaf or have hearing impairments and who are within the control and supervision of the LDPSC, and who have been denied, are being denied, or will be denied the assistance they need to effectively communicate and participate in, and obtain the benefits of,

LDPSC services, programs and activities.

**Rule 23(a) Requirements**

43. **Ascertainability.** The Class is readily ascertainable as Defendants have or should have records regarding all probationers and parolees who are deaf or have hearing impairments.

44. **Numerosity.** The exact number of putative class members is unknown and can only be determined through appropriate discovery. Based on a preliminary investigation, Plaintiffs believe that the members of the Class are so numerous that joinder of all members is impracticable.

45. **Commonality.** Questions of law and fact common to the Class include, but are not limited to:

   a. Whether Defendants have policies in place to address the needs of probationers and parolees who are deaf or have hearing impairments.

   b. Whether the requisite auxiliary aids and services are available and provided when the terms and conditions of probation or parole are explained to probationers and parolees who are deaf or have hearing impairments.

   c. Whether the requisite auxiliary aids and services are available for and provided to probationers and parolees who are deaf or have hearing impairments during required and other post-release treatment classes.

   d. Whether the requisite auxiliary aids and services are available for and provided to probationers and parolees who are deaf or have hearing impairments during home inspections with probation and parole officers.

   e. Whether the requisite auxiliary aids and services are available for and provided to probationers and parolees who are deaf or have hearing impairments during

office visits with probation and parole officers.

  f. Whether Defendants are required to provide education and training to probation and parole officers and key administrators in issues that affect probationers and parolees who are deaf or have hearing impairments and, if so, whether such education and training is being provided.

46. **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct. Individual cases would require each member of the Class to prove the same claims, based on the same conduct of Defendants, using the same legal theories, and seek the same relief.

47. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have no interests antagonistic to, or in conflict with, those of the Class. Plaintiffs will vigorously protect the interests of absent Class members. Plaintiffs have retained counsel who are competent and have extensive experience in complex, class action litigation and in disability and civil rights claims against governmental entities.

**Rule 23(b) Requirements**

48. Class action status is warranted under Federal Rule of Civil Procedure 23(b)(1)(A) because prosecution of separate actions by Class members would create a risk of establishing incompatible standards of conduct for Defendants.

49. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by Class members would create a risk of adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of other

members who are not parties to this action, or that would substantially impair or impede their ability to protect their interests.

50. Certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or other equitable relief appropriate with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I

### Violation of Title II of the ADA, 42 U.S.C § 12101 *et seq.*

51. Paragraphs 1-50 are incorporated as if set forth fully herein.

52. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132.

53. Public entities, such as the LDPSC, are covered by the ADA.

54. The ADA defines an individual with a disability as someone who: (i) has a physical or mental impairment that substantially limits one or more major life activities; (ii) has a record of such impairment; or (iii) is regarded as having such impairment. *See* 42 U.S.C. § 12102(2).

55. The term "major life activities" includes hearing. *See* 42 U.S.C. § 12102(2)(A).

56. Plaintiffs are deaf or have hearing impairments and, thus, are disabled under these provisions and entitled to the protections of the ADA.

57. In addition to being aware that Plaintiffs are deaf or have hearing impairments, Defendants were aware and knew that Plaintiffs were limited by their disabilities because, among

other things, Plaintiffs informed Defendants that they did not understand fully the terms and conditions of their probation or parole; Plaintiffs informed Defendants that they were unable to communicate sufficiently with, or understand, their parole or probation officers during mandatory office visits and home inspections; and Plaintiffs informed Defendants that they were not able to understand what was being taught during mandatory and other classes, thus preventing Plaintiffs from participating meaningfully in those classes.

58. The ADA requires that Defendants take appropriate steps to ensure that communications with individuals with disabilities, including probationers and parolees who are deaf or have hearing impairments, are as effective as communications with others.

59. Once aware of ADA-protected limitations, the ADA requires that state agencies "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b); *see also*, 28 C.F.R. § 41.51(e). "Auxiliary aids" include qualified sign language interpreters. *See* 28 C.F.R. §§ 35.104. Defendants have repeatedly rejected Plaintiffs' requests for qualified interpreters at mandatory office visits and home inspections, post-release educational classes, and other meetings.

60. Further, "[a] public entity shall not require an individual with a disability to bring another individual to interpret for him or her" and "shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication except [i]n an emergency . . . or [w]here the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances." 28 C.F.R. § 35.160(c)(1)-(2). Defendants have violated this provision by requiring others to act as

interpreters and by requiring Plaintiffs to bring their own interpreters to meetings.

61. As a result of Defendants' failure to provide adequate access to qualified interpreters, Plaintiffs have not been adequately informed of their probation or parole requirements, have not understood what was communicated to them at mandatory office visits and home inspections, and have not been able to take or fully participate in post-release classes. In some cases, individuals have been incarcerated because they unknowingly violated the terms of their probation or parole.

## COUNT II

**Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.**

62. Paragraphs 1-61 are incorporated as if set forth fully herein.

63. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794.

64. State and local probation and parole departments receiving federal financial assistance are covered by the Rehabilitation Act. The LDPSC has been, and is, a recipient of federal funds, and thus is covered by the Rehabilitation Act.

65. The Rehabilitation Act defines an individual with a disability as someone who: (i) has a physical or mental impairment that substantially limits one or more major life activities; (ii) has a record of such impairment; or (iii) is regarded as having such impairment. *See* 29 U.S.C. § 705(20)(B).

66. The term "major life activities" includes hearing. *See* 28 C.F.R. § 41.31(b)(2).

67. Plaintiffs are deaf or have hearing impairments and, thus, are disabled under these provisions and entitled to the protections of the Rehabilitation Act.

68. In addition to being aware that Plaintiffs are deaf or have hearing impairments, Defendants were aware and knew that Plaintiffs were limited by their disabilities because, among other things, Plaintiffs informed Defendants that they did not understand fully the terms and conditions of their probation or parole; Plaintiffs informed Defendants that they were unable to communicate sufficiently with, or understand, their parole or probation officers during mandatory office visits and home inspections; and Plaintiffs informed Defendants that they were not able to understand what was being taught during mandatory and other classes, thus preventing Plaintiffs from participating meaningfully in those classes.

69. Once aware of these limitations, state agencies must "take appropriate steps to ensure that communications with their applicants, employees, and beneficiaries are available to persons with impaired . . . hearing." 28 C.F.R. § 41.51(e). Defendants have repeatedly rejected Plaintiffs' requests for qualified interpreters at mandatory office and home visits, post-release educational classes, and other meetings.

70. As a result of Defendants' failure to provide adequate access to qualified interpreters, Plaintiffs have not been adequately informed of their probation or parole requirements, have not understood what was communicated to them at home and office visits, and have not been able to take or fully participate in post-release classes. In some cases, individuals have been incarcerated because they unknowingly violated the terms of their probation or parole.

**PRAYER FOR RELIEF**

71.     WHEREFORE, Plaintiffs respectfully request that the Court issue the following relief:

    A.    An order certifying this action as a class action;

    B.    An order mandating that the LDPSC establish a remediation program requiring the following steps be taken by Defendants:

        a.    Provide qualified ASL interpreters at all classes offered by the LDPSC that probationers and parolees who are deaf or have hearing impairments are required to take or would like to take so they can fully and effectively participate in and benefit from the programs and classes.

        b.    Provide qualified ASL interpreters at meetings with probation or parole officers, including office and home visits.

        c.    Ensure that probationers and parolees who are deaf or have hearing impairments are able to communicate effectively (*e.g.*, with an ASL interpreter) at all proceedings.

        d.    Undertake education and training of probation and parole officers and key administrators in issues that affect probationers and parolees who are deaf or have hearing impairments. Such training is essential to ensuring that the federal rights of probationers and parolees who are deaf or have hearing impairments are protected.

        e.    Retain an independent monitor approved by counsel listed below. The monitor must be given access to LDPSC facilities and records

adequate to provide effective oversight of Defendants' compliance with its statutory and constitutional obligations to provide adequate and appropriate auxiliary aids and services to probationers and parolees who are deaf or have hearing impairments. The monitor will issue yearly reports to Defendants and counsel listed below for at least five (5) years.

C. An order enjoining Defendants and their staff from retaliating against Plaintiffs and class members due to the filing of this Complaint;

D. An order enjoining Defendants from further violations of the ADA and Rehabilitation Act;

E. An order granting declaratory and injunctive relief, as set out in this Complaint.

F. An order declaring that Plaintiffs are the prevailing party in this case and awarding them attorneys' fees, court costs, expert costs, and litigation expenses pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a(b); and,

G. Such other and further relief as appears reasonable and just, to which Plaintiffs may be entitled.

Respectfully submitted,

Dated: August 16, 2016

By: s/ Madeline C. Rea
　　　Madeline C. Rea
Proskauer Rose LLP
650 Poydras Street
Suite 1800
New Orleans, LA 70130
(504) 310-2037
mrea@proskauer.com

Russell L. Hirschhorn (*pro hac vice* to be filed)
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
(212) 969-3286
rhirschhorn@proskauer.com

Nell Hahn
Advocacy Center
600 Jefferson Street
Suite 812
Lafayette, LA 70501
(337) 237-7380 ext. 311
nhahn@advocacyla.org

Susan Meyers
Advocacy Center
8325 Oak Street
New Orleans, LA 70118
(504) 522-2337 ext. 138
smeyers@advocacyla.org

Elliot Mincberg (*pro hac vice* to be filed)
Washington Lawyers' Committee For Civil Rights And Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
(202) 319-1000
elliot_mincberg@washlaw.org