**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| LAWRENCE LEVY, CEDRIC HAMMOND, and BRADLEY CASTO, | |
| Plaintiffs, | Case No. 3:16-cv-00542-JWD-EWD |
| v. | **MEMORANDUM OF LAW** **IN SUPPORT OF PLAINTIFFS'** <u>**MOTION FOR SUMMARY JUDGMENT**</u> |
| LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, and JAMES LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, | |
| Defendants. | |

**PRELIMINARY STATEMENT**

The Louisiana Department of Public Safety and Corrections (the "LDPSC") has long admitted that it must develop and implement a comprehensive policy to ensure that deaf and hard of hearing persons under its supervision can communicate effectively with LDPSC staff and participate in LDPSC programs.  An investigation by the U.S. Department of Justice ("DOJ") into complaints that those incarcerated within the LDPSC who were deaf or hard of hearing had not received reasonable accommodations in violation of the Rehabilitation Act of 1973 and Americans with Disabilities Act ("ADA") resulted in a 2008 Resolution Agreement to ensure such accommodations would be made.

Unfortunately, a decade later, the LDPSC has done nothing to cure the very same problems for deaf and hard of hearing probationers and parolees under its supervision.  *In fact, the LDPSC has admitted that it does not—and will not—make available qualified American Sign Language ("ASL") interpreters to deaf and hard of hearing probationers and parolees, despite having adopted regulations and policies requiring the same*.  Without qualified ASL interpreters,

Plaintiffs cannot communicate effectively with their probation and parole officers, and they are in constant jeopardy of violating the terms and conditions of their probation or parole.  So long as the LDPSC fails to provide qualified ASL interpreters at meetings between Plaintiffs and the LDPSC, Defendants are in violation of the Rehabilitation Act and ADA.

This Court should grant judgment in favor of Plaintiffs for Defendants' violations of the Rehabilitation Act and ADA.  Ensuring that Plaintiffs are able to effectively communicate with their probation and parole officers is not merely an aspirational goal; it is required by law.

## STATEMENT OF FACTS

### A.    Discovery In This Action

During discovery in this action, the LDPSC designated Bobby J. Lee, Jr. to testify on its behalf pursuant to Fed R. Civ. Pro 30(b)(6).  (Declaration of Russell T. Gorkin at ¶ 1.)  Mr. Lee is the Deputy Director of the LDPSC Division of Probation and Parole (the "DPP").  (Ex. A–Lee Tr. at 36:4–7.)[1]  This Statement of Facts is based on Mr. Lee's testimony, as well as the testimony of:  (i) Curtis P. Fremin, Jr., who is the Director of the DPP; (ii) Sarah Bordelon, Darryl Anderson and Corey Bennett, all of whom are the LDPSC probation and parole officers for the Plaintiffs; and (iii) Dr. Daniel Burch, whose company is a vendor to and receives payment from the LDPSC, and who was produced as a fact and expert witness on behalf of Defendants. (Ex. B–Fremin Tr. at 14:2–6; Ex. C–Bordelon Tr. at 12:11–21; Ex. D–Anderson Tr. at 10:6–11:8; Ex. E–Bennet Tr. at 11:10–13:24; Ex. F–Burch Tr. at 18:14–22:15.)  In addition, this Statement of Facts is based on the Plaintiffs' undisputed Declarations, and a report prepared by Plaintiffs' expert, Dr. Dennis R. Cokely.  Defendants did not take any discovery in this action, except to depose Plaintiffs' expert.

---

[1] Unless noted otherwise, all exhibits referenced herein are attached to the Declaration of Russell T. Gorkin in Support of Plaintiffs' Motion for Summary Judgment.  For the Court's convenience, all citations to deposition transcripts are identified by their Exhibit letter as well as the deponent's last name.

B.      **The LDPSC**

Defendant LDPSC and its Secretary, Defendant James M. LeBlanc, oversee the

Louisiana Department of Corrections Services (the "DOC"), which is divided into several

divisions, one of which is the DPP.  (Ex. G.)  The LDPSC is a recipient of federal financial

assistance.  (ECF No. 14 ¶¶ 10, 33; Ex. H; Ex. I ¶¶ 2, 5, 11.)

The DPP oversees individuals who have been sentenced to probation and who have been

released from prison on parole.  (ECF No. 14 ¶ 13.)  The principal points of contact between the

DPP and probationers and parolees are DPP officers, who are responsible for explaining and

ensuring that probationers and parolees abide by the terms and conditions of supervision and for

identifying problems and solutions.  (*Id*.)  DPP officers meet with probationers and parolees at

their homes, work, and the DPP's offices.  (*Id*.; Ex. C–Bordelon Tr. at 31:7–16; 41:8–16.)  DPP

officers also monitor probationers' and parolees' attendance at required programs, such as sex

offender treatment classes.  (*See* Ex. C–Bordelon Tr. at 34:1–8; Ex. D–Anderson Tr. at 24:20–

24.)  If a DPP officer believes that a probationer or parolee has violated a condition of his or her

probation or parole, the officer is authorized to arrest him or her.  (ECF No. 14 ¶ 13; *see* Ex. C–

Bordelon Tr. at 33:15–23, 51:2–13.)  Punishment for violations of a term or condition of

probation or parole may include an extension of the term of probation or parole and/or

incarceration.  (Ex. A–Lee Tr. at 113:4–114:11; Ex. E–Bennet Tr. at 23:18–24:2, 49:2–22.)

As discussed in more detail below, probationers and parolees under the supervision of

Defendants include Plaintiffs Lawrence Levy, Cedric Hammond and Bradley Casto, all of whom

are deaf or hard of hearing and communicate effectively only through ASL.  (Declaration of

Lawrence Levy ("Levy Decl.") ¶¶ 2–3, 6; Declaration of Cedric Hammond ("Hammond Decl.")

¶¶ 2, 4–7; Declaration of Bradley Casto ("Casto Decl.") ¶¶ 2–3; *see also* Ex. J at 6–30

(explaining that ASL is the only means of communication that enables effective, efficient and

reliable communication for members of the "American Deaf Community").)

C.     **Applicable LDPSC Regulations and Policies**

The LDPSC has adopted several regulations, applicable to the LDPSC generally, and policies, applicable to the DPP specifically, that explain the need to provide "effective communication" to deaf or hard of hearing individuals under its supervision and control, as well as procedures to ensure effective communication with such individuals.  (Ex. K; Ex. L; Ex. A–Lee Tr. at 16:11–18, 145:12–146:3, 148:16–25.)

Those regulations and policies were developed after the DOJ conducted an investigation into the LDPSC's failure to provide effective communication to deaf or hard of hearing inmates. That investigation culminated in 2008 with a resolution agreement by and between the LDPSC and the DOJ (the "DOJ Resolution Agreement").  (Ex. I ¶ 1, Attachment A ¶ 1.)

As applicable here, Regulation No. B-08-018 codifies the definition of "Effective Communication" as:

> Communication with persons with disabilities that is as effective as communication with others.  Effective Communication is achieved by furnishing appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities an equal opportunity to participate in or benefit from the services, programs and activities of the Department.

(Ex. K ¶ 6.E.)  The DPP's policy similarly emphasizes the importance of providing effective communication to probationers and parolees.  (Ex. L ¶ 6.A.)

Regulation No. B-08-018 further provides that the LDPSC "shall provide qualified sign language or oral interpreters when necessary for effective communication with, or effective participation in, departmental programs and activities by employees, offenders and visitors who are deaf or hearing-impaired."  (Ex. K ¶ 8.A.)  A "qualified interpreter"—as required under Louisiana law and the LDPSC's regulations and policies—must be someone who is certified by

4

the Registry of Interpreters for the Deaf ("RID").  (LA. R.S. 46:2362; Ex. M ¶ 9.C.3; Ex. L ¶ 7.F

(stating that interpreter provided will be "in keeping with the requirements of the law" – *e.g.*, the

Louisiana Revised Statutes).)  In addition, the policy that is specifically applicable to

probationers and parolees requires qualified interpreters to be provided "as warranted, to ensure

effective communication," including during "the intake process, [at] office visits and preliminary

hearings conducted in the field," as well as at any programs that probationers and parolees are

required to attend as a condition of their supervision.  (Ex. L ¶¶ 6.A, 7.H.)

To determine whether an individual needs access to a qualified sign language interpreter,

Regulation No. B-08-018 requires the DPP to make an "initial communication assessment"

within 48 hours of the intake interview, present a probationer or parolee with a "Request for

Accommodation" form, and perform a follow-up assessment conducted by properly trained staff

or an outside provider within ten weeks of the initial assessment.  (Ex. K ¶ 7.C.2–3 (citing

Ex. N).)  Thereafter, the DPP must conduct annual assessments.  (*Id.* ¶ 7.C.4.)  The DPP's policy

also provides that "[i]t must be determined how best the offender communicates, [*i.e.*,] through

sign language . . . prior to explaining the conditions of probation or parole . . . ."  (Ex. L ¶ 7.E.)

If the communication assessment reveals that "the offender is deaf or hard of hearing," the policy

provides that "the appropriate [auxiliary aid or service] will be utilized."  (*Id.*)

Significantly, Regulation No. B-08-018 provides that Effective Communication *cannot*

be achieved by using individuals who are incarcerated to interpret, even if the individual "may

possess the skill level necessary to provide interpreting services[, because] impartially [sic]

concerns remain, and in many—if not most—situations, offender interpreters should not be used

due to confidentiality, privacy and security reasons."  (Ex. K ¶ 6.H; *see also* Ex. O at 2–3; Ex. P

at 2 (stating that deaf offenders "always retain the right of access to a qualified non-inmate

5

interpreter").)  Louisiana state law also provides that interpreter certification may be withheld or revoked based upon a "[c]onviction of a felony or any offense involving moral turpitude," such as crimes of violence, theft and forgery.  (LA R.S. 46:2356–A.(1), C–D.)

**D.      Defendants' Interactions with Deaf and Hard of Hearing Probationers and Parolees**

Defendants' actual practices are materially different from those required by Louisiana state law, the LDPSC's regulations and policies, and the DOJ Resolution Agreement. Defendants' practices, in fact, materially obstruct deaf and hard of hearing probationers' and parolees' ability to communicate effectively, as illustrated by the following:

➤      Defendants do not perform a communication assessment within forty-eight hours of intake (*i.e.*, the time at which the offender first reports to DPP)—or any time thereafter—to assess whether probationers and parolees require an ASL interpreter to effectively communicate. (Levy Decl. ¶ 8; Hammond Decl. ¶ 8; Casto Decl. ¶ 8; Ex. A– Lee Tr. at 63:20–65:19 (failing to describe any standardized process to assess a probationer or parolee's ability to communicate).)

➤      Defendants do not provide deaf or hard of hearing probationers and parolees with a "Request for Accommodation" form.  (Levy Decl. ¶ 13; Hammond Decl. ¶ 8; Casto Decl. ¶ 8; Ex. A–Lee Tr. at 91:12-92:20, 122:8-10; Ex. B–Fremin Tr. at 55:13-56:20.)

➤      Even when requested, Defendants rarely provide qualified ASL interpreters at intake meetings when the terms and conditions of probation and parole are explained. (Ex. A–Lee Tr. 63:20–64:16; Casto Decl. ¶ 7.)  Instead, Defendants have required probationers and parolees to bring family or friends to try to serve as interpreters. (Ex. A–Lee Tr. 63:20–64:16; Casto Decl. ¶ 7.)

➤      Even when requested, Defendants rarely provide qualified ASL interpreters at meetings between Plaintiffs and their respective DPP officers, and they are never

provided at field visits.  (Levy Decl. ¶ 10; Hammond Decl. ¶¶ 12–13; Casto Decl. ¶¶ 9–
10; Ex. C–Bordelon Tr. at 45:9–13 ("Q. And are there interpreters at these field visits? A.
Nope. Q. Ever? A. Nope.").)

➢       During interactions between DPP officers and Plaintiffs, DPP officers try to

communicate with Plaintiffs by using written notes, texting or talking even when

attempting to explain and clarify conditions of probation or parole and when arresting

probationers or parolees for alleged violations, notwithstanding the fact that Plaintiffs

cannot communicate effectively using written or verbal English.  (Ex. Q at 2; Levy Decl.

¶¶ 9, 12, 14; Hammond Decl. ¶¶ 4, 6-7, 12, 17; Casto Decl. ¶¶ 2–3, 10; Ex. A–Lee Tr. at

64:22-65:1; Ex. C–Bordelon Tr. at 56:4-24.)

➢       Defendants occasionally use inmates to interpret for deaf and/or hard of hearing

probationers and parolees at office visits through the use of Video Remote Interpreting

("VRI"), but have never used VRI technology at field visits.  (Levy Decl. ¶ 10;

Hammond Decl. ¶ 19; Ex. A–Lee Tr. at 82:17–84:22; 90:13–91:2, 199:4-9.)

➢       To the extent any interpreters are provided at required programs, (Ex. S at 14–15

(indicating the LDPSC does not provide an interpreter for Casto at sex-offender

treatment)), Defendants currently use inmates to try to interpret, (Levy Decl. ¶¶ 18–19;

Hammond Decl. ¶¶ 19–20).

➢       None of the inmates used by the LDSPC to try to interpret have scored a 4.0 on

the Educational Interpreter Performance Assessment ("EIPA") test, much less been

certified or recognized by RID, as required by Regulation No. B-07-001 and Louisiana

state law.  (Ex. R; Ex. J at 39; Ex. F–Burch Tr. at 68:22-69:2 (stating score of 4.0 is the

minimum necessary to be recognized by RID).)  Plaintiffs have repeatedly complained to

7

Defendants about the inmates' interpreting skill level, and requested qualified ASL interpreters, but Defendants have ignored those requests.  (Levy Decl. ¶¶ 10, 18–19; Hammond Decl. ¶ 19).

➢       Six of the DPP offices are incapable of providing VRI services entirely, and the VRI technology available at the other offices often malfunctions.  (Ex. A–Lee Tr. at 84:15–85:4, 135:19-136:17.)  Plaintiffs have complained to Defendants about the absence or poor quality of VRI, and difficulty with seeing the video screen; they also have requested that Defendants provide qualified ASL interpreters.  (Ex. C–Bordelon Tr. at 54:8–25.)  Defendants ignored those requests.  (Levy Decl. ¶ 18; Hammond Decl. ¶ 19.)

Three examples of Plaintiffs' interactions with Defendants are particularly illustrative:

➢       Mr. Hammond's parole officer visited him on October 15, 2014.  (Hammond Decl. ¶ 15.)  Without any interpreter present, the DPP Officer examined Mr. Hammond's cellular phone, arrested him for allegedly having viewed material he was prohibited from viewing as a condition of his parole, and presented him with a form to sign.  (*Id*.; Ex. U at 5 (10/15/2014 Entry).)  Mr. Hammond did not understand the form, but signed it anyway, "admitting" that he was in violation of his parole and "agreeing" to waive his right to a court hearing and counsel.  (Hammond Decl. ¶ 15.)  By signing, he also "agreed" to the imposed administrative sanction of ten days' incarceration in parish prison.  (Ex. V; Ex. U at 5; *see also* Hammond Decl. ¶ 15.)

➢       During field visits—*i.e.*, interactions between probationers or parolees and DPP officers that take place at a location other than an LDPSC office, such as a probationer or parolee's home or workplace—after this litigation commenced, Messrs. Levy's and Hammond's parole officer presented them with a document entitled "ELECTION FORM

8

Regarding Use of an ASL Interpreter during Field Visits." (Levy Decl. ¶ 15; Hammond Decl. ¶ 18; Ex. W; Ex. X; Ex. D–Anderson Tr. at 50:18–52:4; Ex. B–Fremin Tr. at 74:7–79:8; Ex. C–Bordelon Tr. at 46:13–47:17, 49:21–50:21.) The document asks the probationer or parolee to choose between discussing issues raised during field visits at an office with the assistance of an ASL interpreter, or to waive his "right" to a qualified ASL interpreter, and to make that choice by signing the form. (Ex W; Ex. X.) No interpreter was present at those meetings when this form was presented. (Ex. D–Anderson Tr. at 50:18–52:10; Ex. C–Bordelon Tr. at 46:13–47:17.)

➤       Mr. Levy cannot read or write well, and has informed his parole officer that he needs a qualified ASL interpreter to understand what is being communicated to him. (Levy Decl. ¶¶ 3, 12, 14.) Nevertheless, Mr. Levy's parole officer instructed him to report to a DPP office on October 2, 2014 for a meeting and advised him to bring his own interpreter if he needed one to understand and communicate effectively. (Ex. T at 4 (10/2/2014 Entry).) At the meeting, the DPP Officer attempted to warn Mr. Levy—through written notes and without any interpreter present—that he would be arrested if he attended a workshop called "The Crisis of Deaf Access to Justice . . . in Prison" coming up at a library because it was located within 1,000 feet of a park. (*Id.*)

E.      **Plaintiffs' Complaint**

On August 16, 2017, Plaintiffs filed a Complaint on behalf of themselves and all present and future LDPSC probationers and parolees who are deaf or hard of hearing, and who are being or will be denied the assistance they need to effectively communicate and participate in, and obtain the benefits of, LDPSC services, programs and activities. (ECF No. 1 ¶ 42.) Plaintiffs bring two causes of action: Count I for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and Count II for violation of Section 504 of the

Rehabilitation Act, 29 U.S.C. § 794, both of which arise out of Defendants' failure to provide adequate access to qualified ASL interpreters, adequately inform Plaintiffs of their probation or parole requirements, adequately communicate with Plaintiffs, and adequately accommodate Plaintiffs during required programs.  (*Id.* ¶¶ 51–70.)

Plaintiffs seek a judgment in their favor and an order mandating that the LDPSC establish a remediation program requiring:  (a) the provision of qualified ASL interpreters at all meetings with probation or parole officers; (b) the provision of qualified ASL interpreters at all programs deaf and hard of hearing probationers and parolees attend as a condition of their supervision; (c) that the LDPSC ensure that deaf or hard of hearing probationers and parolees are able to communicate effectively (*e.g.*, with an ASL interpreter) at all proceedings; (d) that probation and parole officers and key administrators undertake training in issues that affect deaf or hard of hearing probationers and parolees; (e) that the LDPSC retain an independent monitor with sufficient access to the LDPSC's facilities and records in order to provide effective oversight of Defendants' compliance with their statutory obligations, and that the monitor issue annual reports to Defendants and Plaintiffs' counsel for at least five years.  (*Id.* ¶ 71.)

In addition, Plaintiffs seek an order:  (a) enjoining Defendants from retaliating against Plaintiffs and similarly situated individuals due to the filing of the Complaint; (b) enjoining Defendants from further violations of the ADA and Rehabilitation Act; and (c) declaring that Plaintiffs are the prevailing party and awarding them attorneys' fees, court costs, expert costs, and litigation expenses pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a(b).  (*Id.*)

## F.     Joint Stipulation

The Parties previously stipulated that any relief afforded to Plaintiffs Levy, Hammond and Casto also will be afforded to any other deaf or hard of hearing probationers and parolees under the supervision of the LDPSC.  (ECF No. 39.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks and footnote omitted). Plaintiffs "should not be required to wait indefinitely for a trial when the defendant has a meritless defense that can be resolved on motion for summary judgment." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

## ARGUMENT

### I.   APPLICABLE LAW

The Rehabilitation Act prohibits discrimination on the basis of disability by recipients of federal financial assistance. *See* 29 U.S.C. § 794(a) (2016). The ADA, which was modeled after the Rehabilitation Act, expanded the scope of disability protection by specifically prohibiting discrimination by state agencies. *See* 42 U.S.C. § 12101(b)(1)–(3). Both were enacted to prevent discrimination against people with disabilities and to create consistent and enforceable standards to address such discrimination. *See* 29 U.S.C. § 701; 42 U.S.C. § 12101(b)(1)–(2). As such, both prohibit an otherwise qualified individual, solely on the basis of her or his disability, from being excluded participation in, denied benefits of, or subjected to discrimination under any service, program, or activity of a public entity, 42 U.S.C. § 12132, or any program or activity receiving federal financial assistance, 29 U.S.C. § 794(a).

The ADA defines an individual with a disability as someone who: (i) has a physical or mental impairment that substantially limits one or more major life activities; (ii) has a record of such impairment; or (iii) is regarded as having such impairment. *See* 42 U.S.C. § 12102(1). The Rehabilitation Act incorporates the ADA's definition of disability. 29 U.S.C. § 705(20)(B). As

11

relevant here, major life activities under the ADA and Rehabilitation Act include hearing and communicating.  42 U.S.C. § 12102(2)(A); 29 U.S.C. § 705(20)(B); 28 C.F.R. § 35.108(b) (2), 28 C.F.R. § 35.108(c)(1)(i), 28 C.F.R. § 41.31(b)(2).

Once a state agency is aware that an individual is disabled, the Rehabilitation Act and ADA require that it provide appropriate auxiliary aids and services, including qualified ASL interpreters, where necessary to afford individuals with disabilities an "equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement" as those without a hearing impairment.  *Alexander v. Choate*, 469 U.S. 287, 305 (1985) (internal quotation mark and citation omitted); *see* 42 U.S.C. § 12131(2); 28 C.F.R. § 35.160(b); 28 C.F.R. § 41.51(e); *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002) ("Congress intended to impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability."); *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 266 (D.D.C. 2015) (concluding that the Rehabilitation Act and ADA impose "*an affirmative obligation* to make benefits, services, and programs accessible to disabled people" (emphasis in original)).  Moreover, a public entity shall give "primary consideration" to the requests of individuals with disabilities, 28 C.F.R. § 35.160(b)(2), and shall not require an individual with a disability to bring another individual to interpret for him or her, nor rely on an adult accompanying an individual with a disability to interpret or facilitate communication, *id.* at § 35.160(c)(1)–(2).[2]

To prevail on a claim under the Rehabilitation Act or ADA, a plaintiff must prove: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible . . .; and (3) that such

---

[2] The only exception is in cases of an emergency or where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, and reliance on that adult for such assistance is appropriate under the circumstances.  *See id.* at § 35.160(c)(1)–(2).

discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011); *see Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) ("Jurisprudence interpreting [the Rehabilitation Act and ADA] is applicable to both."); *George v. La. Dep't of Pub. Safety & Corr.*, 14-cv-338, 2016 WL 3568109, at *8 n.8 (M.D. La. June 23, 2016) (stating "the ADA expanded upon [the Rehabilitation Act's] protections" and so "the same prima facie case [can] be made by a disabled plaintiff under both acts . . . because there is no significant difference in the analysis of the rights and obligations created by the two Acts" (internal citations omitted)). "If the accommodation is required, the defendants are liable simply by denying it." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005); *see Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) (explaining latter two elements are satisfied if reasonable accommodation is not provided).

II.   **PLAINTIFFS ARE INDIVIDUALS WITH QUALIFIED DISABILITIES WHO ARE BEING DENIED THE BENEFITS OF SERVICES AND PROGRAMS BECAUSE OF THEIR DISABILITIES.**

Plaintiffs are deaf or hard of hearing whose only means of effective communication is ASL and, as such, have qualified disabilities within the meaning of the Rehabilitation Act and ADA. *See infra* Point II.A. Defendants have admitted that they have not—and do not—provide Plaintiffs with qualified ASL interpreters during interactions with Plaintiffs, as required by law and Defendants' own regulations and policies. *See infra* Point II.B. Accordingly, Plaintiffs are entitled to a judgment that Defendants have violated and are violating the Rehabilitation Act and ADA as a matter of law.[3]

---

[3] It is well established that state and local agencies like the LDPSC may be held liable under the ADA. *See* 42 U.S.C. § 12131(1)(B); *George v. La. Dep't of Pub. Safety & Corr.*, No. 14-cv-338, 2017 WL 4325527, at *7 (M.D. La. Sept. 29, 2017); 29 U.S.C. § 794(b)(1)(A). As an agency that receives federal financial assistance, the LDPSC also may be held liable under the Rehabilitation Act. 29 U.S.C. § 794(b)(1)(A); *see Miller v. Tex. Tech Univ. Health Scis. Ctr.,* 421 F.3d 342 (5th Cir. 2005) (en banc). Defendant LeBlanc also may be held liable for violations of the ADA and Rehabilitation Act because the plaintiffs are seeking injunctive relief and he is named in his official capacity only. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 375 (2001).

A.     **PLAINTIFFS ARE INDIVIDUALS WITH QUALIFIED DISABILITIES.**

Plaintiffs have satisfied their burden of proving that they have qualified disabilities because they are all deaf or severely hard of hearing and communicate primarily using ASL. *See, e.g.*, *Delano-Pyle*, 302 F.3d at 569, 576 (affirming verdict in favor of hard of hearing plaintiff on Rehabilitation Act and ADA claims); *Durrenberger v. Tex. Dep't of Crim. Just.*, 757 F. Supp. 2d 640, 651–52 (S.D. Tex. 2010) (granting summary judgment to hard of hearing plaintiff on Rehabilitation Act and ADA claims).

Here, it is undisputed that each Plaintiff is deaf or severely hard of hearing.  Specifically, Mr. Levy lost 100% of the hearing in his right ear when he was seven years old, and he is hard of hearing in his left ear.  (Levy Decl. ¶ 2.)  Mr. Hammond was born completely deaf.  (Hammond Decl. ¶ 2.)  Mr. Casto was born completely deaf in his left ear, and lost 90% of the hearing in his right ear as a result of an infection when he was five years old.  (Casto Decl. ¶ 2.)  Plaintiffs have a limited ability to understand and communicate orally or in writing, and ASL is their primary method of communication.  (Levy Decl. ¶ 3; Hammond Decl. ¶¶ 2, 4; Casto Decl. ¶¶ 3, 10.) Accordingly, Plaintiffs are "disabled" as that term is defined by the Rehabilitation Act and ADA and their implementing regulations.

B.     **PLAINTIFFS ARE BEING DENIED SERVICES AND PROGRAMS BECAUSE OF THEIR QUALIFIED DISABILITIES.**

1.     **Defendants Have Failed To Provide Qualified ASL Interpreters To Plaintiffs.**

Plaintiffs have satisfied their burden of proving the second and third elements of their claims under the Rehabilitation Act and ADA, *i.e.*, they are being denied the benefits of services, programs, or activities for which Defendants are responsible, and are being discriminated against by reason of their disabilities.  Defendants have failed to provide reasonable accommodations to enable Plaintiffs to obtain the same benefits and participate in the same programs that non-

disabled probationers and parolees do.

Plaintiffs, as probationers and parolees, are under the supervision of Defendants. (ECF No. 14 ¶ 13; Ex. A–Lee Tr. at 51:24–52:6.) Defendants *admit* that they generally do not provide qualified ASL interpreters to Plaintiffs when Defendants interact with them at office visits or at programs required as a condition of supervision, and never provide them during field visits. (Ex. A–Lee Tr. at 90:13–22; Ex. C–Bordelon Tr. at 45:9–13 ("Q. And are there interpreters at these field visits? A. Nope. Q. Ever? A. Nope."); *id.* at 67:10–13 ("Q. Have you ever requested either an interpreter or any other form of aid to help them understand what's going on in a visit? A. In a visit, no."); Ex. E–Bennet Tr. at 38:22–39:11, 42:18–25 (admitting LDPSC has never provided an interpreter to Casto); Ex. S at 7 (4/6/2014 entry – denying request for interpreter despite acknowledgement that Casto is legally deaf), 14–15 (4/10/2015 and 3/30/2015 entries – requiring Casto to procure and pay for interpreter at sex offender treatment class); Ex. T at 5–6 (10/2/2014 entry – officer telling Levy if he needed an interpreter for meeting he would have to bring one with him).) Instead, Defendants force Plaintiffs to attempt to communicate through written notes, texting, or by talking to them or their spouses, and sometimes by using inmates to serve as interpreters, even though Plaintiffs are unable to communicate effectively through those methods. (Levy Decl. ¶¶ 3, 9, 12, 14; Hammond Decl. ¶¶ 4, 6–7, 12, 17; Casto Decl. ¶ 10; Ex. U at 1 (DPP Officer Bordelon writing that she "talked with [Hammond] via writing on a paper"); Ex. Q at 2 (DPP Officer Bordelon's communication with Hammond through written notes and Hammond's protest that the interpreter provided at office visit was not "ASL quality"); Casto Decl. ¶ 7 (forcing Casto's wife to translate during office visit).)

Defendants' failure to provide qualified ASL interpreters to Plaintiffs clearly violates the Rehabilitation Act and ADA. *See Arce v. Louisiana*, No. 16-cv-14003, 2017 WL 6767200 (E.D.

La., Dec. 18, 2018) (finding defendants were liable under Rehabilitation Act and ADA for failing

to provide qualified ASL interpreter to hard of hearing offender); *Pierce*, 128 F. Supp. 3d at 277

(granting summary judgment to hard of hearing offender on Rehabilitation Act and ADA claims

because defendants failed to provide qualified ASL interpreters); *Clarkson v. Coughlin*, 898 F.

Supp. 1019, 1049-50 (S.D.N.Y. 1995) (same); *McBride v. Mich. Dep't of Corr.*, No. 15-cv-

11222, 2018 WL 1224783, at *3 (E.D. Mich., Mar. 6, 2018) (same).  That Defendants and

Plaintiffs have communicated in a limited manner through written notes or otherwise is

irrelevant.  *See Chisolm v. McManimon*, 275 F.3d 315, 328–29 (3d Cir. 2001) (concluding that

hard of hearing plaintiff's communication with prison staff exclusively through written notes

insufficient to preclude finding that provision of sign language interpreter still required under

ADA); *Durrenberger*, 757 F. Supp. 2d at 654 (concluding that written communication "is

qualitatively different" from communication via assistance of other auxiliary aids, and finding

that defendant failed to produce "any evidence from which a reasonable fact-finder could

conclude that [the written] accommodations" allowed plaintiff to meaningfully participate in

prison program); *Pierce*, 128 F. Supp. 3d at 275-76 (granting summary judgment to plaintiff

based on defendants' failure to provide ASL interpreter even though plaintiff was college

educated, had written term papers for high school and college courses, and communicated with

family members through written Facebook messages).

 To make matters worse, Defendants were fully aware that Plaintiffs required the use of

ASL interpreters and still refused to provide them.  (Levy Decl. ¶¶ 10, 12; Hammond Decl. ¶ 12;

Casto Decl. ¶¶ 7, 10; Ex. D–Anderson at 19:6–11; Ex. E–Bennet at 38:22–39:11, 42:18–25.)

Plaintiffs have informed Defendants that they do not fully understand the terms and conditions of

their probation or parole (Levy Decl. ¶ 10; Hammond Decl. ¶¶ 6–7, 12, 15, 17; Casto Decl. ¶ 7;

Ex. C–Bordelon at 56:4-24), that they are unable to communicate sufficiently with, or

understand, their probation or parole officers during office and field visits (Ex. Q at 2), and that

they are unable to understand what is being communicated during mandatory programs, and

therefore cannot meaningfully participate in or obtain the benefits from those programs (Levy

Decl. ¶¶ 18–19; Hammond Decl. ¶ 19–20; Ex. C–Bordelon Tr. at 54:8–25).

Defendants' practice of using inmates to interpret in lieu of qualified ASL interpreters

falls far short of satisfying the requirements of the Rehabilitation Act and the ADA (as well as

the LDPSC's own regulations and policies).[4]  To begin with, inmates are not qualified to serve as

ASL interpreters under Louisiana law because none of them has ever been nationally certified by

the RID or even scored a 4.0 on the EIPA test.  (LA. R.S. 46:2362; Ex. R (demonstrating no

inmate has scored higher than a 3.4 on the EIPA test); Ex. F–Burch Tr. at 68:22–69:2 (stating 4.0

is minimum score necessary to be recognized by RID); Ex. J at 39 (finding "no evidence" that

any inmates used to interpreter have ever been certified by the RID).)  The inmates are not even

qualified under Defendants' own regulations and policies.  (*See* Ex. M ¶ 9.C.3.)  Given the high-

stakes interactions between Plaintiffs and their probation and parole officers—where the lack of

effective communication can and has resulted in incarceration—the use of inmates to interpret is

clearly inadequate.  (Ex. J at 21–22.)

Furthermore, independent, qualified ASL Interpreters are necessary to ensure impartiality

and confidentiality.  *See* 28 C.F.R. § 35.160(b)(2) ("In order to be effective, auxiliary aids and

services must be provided . . . in such a way as to protect the privacy and independence of the

individual with a disability.").  Indeed, the first tenet of RID's Code of Professional Conduct

stresses the importance of confidentiality, and the third states that even perceived conflicts of

---

[4] Defendants' provision of inmates to interpret for Plaintiffs and the presentation of the form asking Plaintiffs to waive their "right" to an ASL interpreter during field visits are actions demonstrating that Defendants know and acknowledge that Plaintiffs require an ASL interpreter to communicate effectively.

interest are to be avoided.  (Ex. O at 2–3.)  But because inmates are not certified by the RID, they

are not bound by the confidentiality rules.  (Ex. J at 38 ("[T]here is no guarantee that those who

completed the program will not share that information with others or that that information will

not be shared with those who wish to do harm to probationers and parolees.").)  Even Louisiana

law recognizes that in most instances people who have been convicted of certain crimes, like

those which many of the inmates that have been used to interpret have been convicted of, are not

trustworthy enough to serve as interpreters.  (LA R.S. 46:2356–A.(1), C–D; Ex. Y–Second

Burch Tr. at 133:22–134:21.)  Moreover, the power dynamic between Defendants and inmates is

enormous, which, at a minimum, gives the appearance that inmates' impartiality may be

compromised when interpreting at Defendants' behest.  *See Pierce*, 128 F. Supp. 3d at 269

(describing "uneven power dynamic" because "inmates necessarily rely totally upon corrections

departments for all of their needs while in custody"); Ex. K at ¶ 6.H (stating with respect to using

inmates to interpret, "impartially [sic] concerns remain, and in many—if not most—situations,

offender interpreters should not be used due to confidentiality, privacy and security reasons."; *cf.*

Ex. F–Burch Tr., at 81:11–82:2 (admitting inability to remain objective can affect quality of

interpretation).  As a result, at least some probationers and parolees are less forthcoming than

they otherwise might be when attempting to communicate with their probation or parole officer,

particularly when it comes to their private personal information.  (Levy Decl. ¶ 10.)

     Finally, the VRI technology used by LDPSC when it utilizes inmates to interpret does not

meet the standards established by the Rehabilitation Act or ADA.  In relevant part, the ADA

regulations require that VRI provide "[r]eal-time, full-motion video . . . over a dedicated high-

speed, wide-bandwidth . . . connection that delivers high-quality video images [and] a sharply

delineated image that is large enough to display the interpreter's face, arms, hands, and fingers

. . . regardless of his or her body position."  28 C.F.R. § 35.160(d).

The LDPSC's own testimony establishes that its VRI does not meet these standards. (Ex. A–Lee Tr. at 84:15–85:4, 134:17–136:6; Ex. Y–Second Burch Tr. at 162:13–166:14.)  And even when there is a stable internet connection, Plaintiffs have repeatedly complained about the difficulty of being able to see the video screen to discern the inmate's gestures, and other technological issues.  (Levy Decl. ¶ 18; Hammond Decl. ¶ 19; Ex. C–Bordelon Tr. at 54:8–25; Ex. D–Anderson Tr. at 27:4–8).[5]

In sum, Plaintiffs are deaf or hard of hearing whose only means of effective communication is ASL.  Defendants have admitted that do not provide Plaintiffs with qualified ASL interpreters during interactions with Plaintiffs and thus continue to violate the Rehabilitation Act and ADA.

## III.    INJUNCTIVE RELIEF IS APPROPRIATE.

An award of injunctive relief based on alleged past wrongs is appropriate when there is a real or immediate threat that the plaintiff will be wronged again.  *See City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983); *Durrenberger*, 757 F. Supp. 2d at 657.  Here, there can be no reasonable dispute that there is a real and immediate threat that Plaintiffs will be wronged again.  Plaintiffs remain subject to supervision by the Defendants and must comply with the terms and conditions of their probation or parole, and Defendants have agreed that any relief awarded in this case should be applied to all similarly situated individuals.  (ECF No. 39.)

The relief requested is specifically tailored to remedy these real and immediate harms.

---

[5] Any argument Defendants may advance that providing qualified ASL interpreters would impose undue financial and administrative burdens or require a fundamental alteration in the nature of the program should be rejected because:  (i) any such defense has been waived, since it was not asserted as an affirmative defense, *Johnson v. Gambrinus Co.*, 116 F.3d 1052, 1059 (5th Cir. 1997); and (ii) the LDPSC's own regulations and policies require the LDSPC to provide ASL interpreters, *Pierce*, 128 F. Supp. 3d at 277 (finding Department of Corrections could not reasonably contend that provision of ASL interpreters would pose an "undue burden" or result in a "fundamental alteration" since its own policy stated that qualified ASL interpreters should be provided).

Indeed, ordering an independent monitor to ensure Defendants' compliance with their

obligations to provide appropriate auxiliary aids and services to deaf and hard of hearing

probationers and parolees is especially warranted given the history and extent of Defendants'

violations (as evidenced by the DOJ Resolution Agreement), and their continued defiance and

staunch refusal to act in accordance with the law.  Accordingly, this Court should enter an order

requiring Defendants to retain an independent monitor.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion

for summary judgment and enter judgment in favor of Plaintiffs.

Dated:  April 4, 2018


Respectfully submitted,


**PROSKAUER ROSE LLP**

By:      */s/ Russell L. Hirschhorn*

Russell L. Hirschhorn (*pro hac vice*)
Russell T. Gorkin (*pro hac vice*)
Om V. Alladi (*pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
(212) 969-3286
rhirschhorn@proskauer.com
rgorkin@proskauer.com
oalladi@proskauer.com

**ADVOCACY CENTER**
Susan Meyers
Laura Thornton
8325 Oak Street
New Orleans, LA 70118
(504) 522-2337
smeyers@advocacyla.org
lthornton@advocacyla.org

**WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS**
Philip Fornaci (*pro hac vice*)
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
(202) 319-1000
phil_fornaci@washlaw.org