**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

LAWRENCE LEVY, et al

v.

NO.  16-cv-542-JWD-EWD

LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS, ET AL

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

The Louisiana Department of Public Safety and Corrections (the Department) is a leader in the development of programs and policies for deaf and hard of hearing offenders.  The Department was awarded the ACA's Innovations in Corrections Award for the sign language program it developed to train ASL (American Sign Language) interpreters.  The Department successfully entered into a Resolution Agreement with the Department of Justice (DOJ) regarding matters pertaining to its facilities, and satisfied the obligations under that Agreement. The DOJ released the Department from further reporting obligations and has had no further contact with the Department. The Department then took the next logical step of refining its policies and practices for offenders under supervision on probation and parole.  The Department understands and fully embraces its responsibilities under the Americans with Disabilities Act and the Rehabilitation Act.   Despite the personal knowledge of the Plaintiffs of the significant changes the Department has made with respect to deaf and hard of hearing offenders, it is now particularly troubling that the Plaintiffs now attempt to portray the Department as intentionally discriminatory to plaintiffs and further have attempted to persuade the Court to grant summary judgment on the basis of unfounded and unsubstantiated allegations or improper negative inferences.  As further discussed herein, the Plaintiffs are not entitled to judgment as a matter of

law on their claims, and they have made no showing that the relief they ask this Court to impose is reasonable or necessary or even legally or factually justifiable.

I.     SUMMARY JUDGMENT STANDARD

A.     FRCP 56 (a) provides that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FRCP 56 (c) describes manner in which a party may support its assertions, i.e., by citing to materials in the record (FRCP (c)(1)(A)) or by showing that a party's proffered materials "do not establish the absence or presence of a genuine dispute." (FRCP (c)(1)(B)). The substantive law at issue in the case determines whether a fact is material or not. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*  The Court is not permitted to "evaluate the credibility of the witnesses, weight the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury resolving all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion. *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir. 1991).

B.     Claims under the ADA and the Rehabilitation Act are often intensely  fact-driven.  Whether a defendant has fulfilled its obligations under these Acts has been held to be a question of fact that can preclude summary judgment.  *See, e.g., Lowe v. Indep. Sch. Dist. No. 1,* 363 F. App'x 548, 552 (10th Cir. 2010) (concerning whether an employer interacted in good faith for purposes of the ADA.) Likewise, whether or not a plaintiff requested a modification or accommodation or whether the requested modification or accommodation was reasonable are also fact questions.  ("The question of reasonableness always requires a fact-specific, contact-

2

specific inquiry." *Pierce v. County of Orange*, 05-55829 and 05-55845, (9th Cir. 5/15/08) 526 F.3d 1190, 1217, citing its prior decision in *Zukle v. Regents of the Univ. of Cal*., 166 F.3d 1041 (9th Cir. 2/23/99.) ("Determining the reasonableness of an accommodation is a fact-specific question that often must be resolved by a factfinder." *Noll v. IBM,* 13-4096-cv (2d Cir. 5/21/15), 787 F.3d 89, 94.)

## II.    THIS CASE IS NOT APPROPRIATE FOR SUMMARY JUDGMENT

Defendants have squarely established a genuine dispute as to the issues that plaintiffs must prove in order to prevail in their claims.  Furthermore, a jury could reasonably find in favor of Defendants at trial.

A.    Defendants dispute Plaintiffs' declarations and argument that their only means of effective communication is ASL.  Corey Bennett supervises Bradley Casto.  He and Mr. Casto communicate verbally without difficulty--he can understand Mr. Casto and Mr. Casto can understand him. Mr. Casto agreed that an interpreter was not necessary and has never requested an interpreter again after his original visit when the subject was discussed and he agreed that it was not necessary.  Ex.C  at 39:16-23; 40:5-13; 41:7-13. Sarah Bordelon supervised Lawrence Levy and Cedric Hammond.  She has not had difficulty effectively communicating with either Mr. Levy or Mr. Hammond by written communication, and neither Mr. Levy or Mr. Hammond complained to her verbally or in writing that they did not understand her communications with them, except to occasionally ask for additional information or clarification of something in discussion the same as any hearing offender would do. Bordelon Decl. at ¶¶1-5. Jamie Oertel is the parole and probation agent who currently supervises Mr. Levy. She has communicated with Mr. Levy through writing.  Mr. Levy has never complained to her that he cannot read or write, or communicate in writing, of understand her written communications, other than to occasionally

ask for additional information or clarification of something in discussion the same as any hearing offender would do. Additionally, Mr. Levy himself has initiated conversations with her via text message. She has never had any reason to believe that the communications between her and Mr. Levy were not effective, nor has Mr. Levy ever stated or indicated that to her. Prior to taking over Mr. Levy's supervision, Agent Oertel had the occasion to observe Mr. Levy's interaction with other agents, and has never had any reason to believe that communications with Mr. Levy were not effective, nor has Mr. Levy ever stated or indicated that in her presence. Mr. Levy's parole file indicates that he has a TABE score of 6.2 in reading. Mr. Levy reports that he is gainfully employed at a restaurant. Oertel Decl. at ¶¶1-10.

Darryl Anderson is the Sex Offender Unit Supervisor in the Baton Rouge Office of the Louisiana Division of Probation and Parole. He is the supervisor over the agents who supervise the parole of Lawrence Levy and Cedric Hammond. In the past, he was a parole agent and supervised Cedric Hammond. He has interacted with both Lawrence Levy and Cedric Hammond frequently over several years. He has never had difficulty, nor has he observed any other agent having difficulty, effectively communicating with Mr. Levy or Mr. Hammond. Neither Mr. Levy nor Mr. Hammond have ever complained to him verbally or in writing that they did not understand anything he or any other agent communicated to them. Cedric Hammond's parole file indicates he has a TABE score of 6.2 in reading. Anderson Decl. at ¶¶ 1-8.

The issue of whether ASL is plaintiffs' "only effective means of communication" is material to the outcome of their claims under the ADA and Rehabilitation Act. The record does not establish that they are entitled to judgment as a matter of law on this issue.

B.      Defendants dispute Plaintiffs' allegations that they have repeatedly requested to be provided with third party contract ASL interpreters at all interactions with Probation and

Parole staff. Bradley Casto discussed the need for an interpreter at his first visit with Agent Bennett. A discussion was had as to whether an interpreter was necessary for effective communication, and Mr. Casto agreed that it was not. Mr. Casto has never brought it up again. Ex. C at 39-40:25-2; 41:9-13. Lawrence Levy has never made a request for an interpreter to his current agent. Jamie Oertel. Oertel Decl.at ¶6. Neither Mr. Levy nor Mr. Hammond requested an interpreter at their office visits, either formally through a written submission or grievance, or verbally to Agent Bordelon. Ex B at 38:14-19

      C.     Defendants dispute that inmate interpreters are not qualified ASL interpreters within the meaning of the ADA and/or Rehabilitation Act and that they do not provide effective communication for deaf and hard of hearing probationers and parolees. La. R.S. 46:2362(E) defines "qualified interpreter/transliterator" as "any person certified by the Registry of Interpreters for the Deaf, or in the event an interpreter/transliterator so certified is not available, one whose qualifications are such that he is able to accurately communicate with and convey information to and from the person who is deaf or hard of hearing." Plaintiffs allege that the law and policies require that a "qualified interpreter" must be someone who is certified by the Registry of Interpreters for the Deaf (RID). However, their citations to the statute and regulations ignore the second part of the statute, which by its plain language provides for persons other than RFID certified individuals to serve as interpreters. Additionally, Dr. Daniel Burch, who oversees the ASL program for the Department, explained that the Louisiana Department of Education considers individuals with a 3.0 EIPA score to be qualified to provide sign language services in schools. Ex. D at 45:12-13. 128: 15-19. Further, it has been the experience of the Department that some deaf and hard of hearing offenders prefer inmate interpreters over contract third-party interpreters. Plaintiffs have failed to show that they are unable to obtain effective

communication through the use of inmate interpreters, and the ADA does not guarantee an individual his preferred choice of modification or accommodation, only one which reasonably provides sufficient access to services.  Thus, it is simply inaccurate for Plaintiffs to argue that inmate interpreters are not qualified to provide effective communication to probationers and parolees as a matter of law.

D.      Defendants dispute Plaintiffs' allegations that ASL interpreters are not provided for interactions with probationers and parolees. Contract interpreters are provided and used at intake interviews.  Ex.B at 27:10-24, 29:9-17. Additionally, interpreters are available for office visits and preliminary hearings. Ex C at 42:18-20.  Interpreters are provided if requested at office visits.  Ex. B at 38:3-10.  An offender can use any means available to communicate in some way to the agent that he needs an interpreter. Ex. A at 40-41:15-2.  He has approved every request for an interpreter that has been presented to him. Ex. A at 48-49:23-1. Vendors for mandatory programs for probationers and parolees are required to provide ASL interpreters. ¶ 3. All district offices have access to interpreters via agent laptops. Toups Decl. at ¶¶ 2,3. Defendants further dispute that offenders are required to or told they are required to pay for their own interpreters. Ex. C at 43:1-2; Ex.B at 37:10-14.

E.      Defendants dispute that providing ASL interpreters at field visits is required under the ADA or Rehabilitation Act.

A reasonable accommodation is one that does not impose an undue hardship on the operation of a program or activity. 45 C.F.R. § 84.12(a)). A public entity is not required to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. 28 C.F.R. § 35.150.  A public entity may impose legitimate safety requirements necessary for the safe

operation of its services, programs, or activities. 28 C.F.R. § 35.130(h). In this case, there are serious security concerns and administrative and financial burdens that would accompany a requirement that ASL interpreters be provided at field visits. Toups. Decl. at ¶ 5. Field visits are performed for various purposes including to verify where the offender lives, discuss any problems they may have, make sure there are no violations, make sure they don't have any firearms, dangerous weapons, drugs and similar reasons. They can occur at any time, 24 hours per day. Ex. C at 46-48:4-11. Some visits must take place in dangerous areas. The "unannounced" characteristic of field visits is essential to properly serve the function for which they are carried out. Interpreters do not accompany agents on field visits for reasons of safety and security. Ex. B at 45-46:9-6. The plaintiffs cannot prove as a matter of law that the policy decision to not have interpreters at field visits violates the balancing concerns incorporated into the Acts.

F. Defendants dispute that plaintiffs do not fully understand the conditions of the probation or parole. There is no evidence in the record other than plaintiffs' declarations to support the allegation that they do not fully understand the terms and conditions of their parole. No agent or employee of the Defendants testified that any plaintiff ever complained about not understanding the terms and conditions of their release. Offenders are advised by either the court or the institution of the terms and conditions imposed on them prior to release and they must acknowledge they understand and agree to those terms and conditions. Additionally, the interpreters are provided at intake interviews where the terms and conditions are again discussed and reviewed. Finally, the terms and conditions are posted on the Department's website in ASL, so that plaintiffs can view the presentation at any time as many times as they desire. Toups Decl at ¶ 4.

G.  Plaintiffs have not demonstrated that any alleged failure to apply certain Department policies violates the ADA or the Rehabilitation Act as a matter of law. Plaintiffs allege that the Defendants fail to follow certain of their own regulations and policies and that from this, the court can infer a violation of the ADA and/or the Rehabilitation Act. However, the court is not permitted to make negative inferences in order to grant summary judgment against a non-moving party.  Further, Plaintiffs have not demonstrated that the policy is applicable to their complaints or that any alleged failure to follow any policy did in fact deprive Plaintiffs of reasonable access to services.   Simply stating, without more, that Defendants have failed to follow a particular policy, does not entitle Plaintiffs to judgment as a matter of law on whether plaintiffs require, have ever requested, and/or have ever been denied, reasonable access to services of the Department.

H.    The cases cited by plaintiffs do not provide authority for summary judgment in this case. Plaintiffs cite Arce v. Louisiana, 2018 U.S. Dist. LEXIS 34035 (E.D. La. Mar. 1, 2018), for the proposition that: "Defendant's failure to provide qualified ASL interpreters to Plaintiffs clearly violates the Rehabilitation Act and ADA."  However, the *Arce* does not provide a basis for this Court to conclude that Plaintiffs are entitled to judgment as a matter of law or that no reasonable jury could find in favor of Defendants on the facts of this case.  *Arce* was tried to a jury, and, after trial, the jury found there had been discrimination in violation of the ADA and the Rehabilitation Act.   Nevertheless, the jury found that there had been no injury, so it only awarded damages of $1.  In addition, because the inmate who had originally filed suit had died while the litigation was pending, all claims for injunctive relief had been dismissed before trial. The holding of the opinion and the findings of the court were addressed to the issue of costs and attorney fees.   Thus, the matter was not decided on motion for summary judgment and the

8

discrimination issue was not decided as a matter of law.   The district court's opinion addresses the issue of attorney fees and costs, and only briefly mentions some of the facts of the case.   It does not tell this Court what, as a matter of law, is violation of the ADA in this regard. Accordingly, plaintiffs are simply wrong in suggesting that the *Arce* case provides any basis for this Court to grant summary judgment to plaintiffs herein.

Similarly, Plaintiffs  misrepresent the court's conclusion in *Durrenberger v. Tex. Dept. of Crim. Justice.,* H-09-0786, 757 F. Supp. 2d 640 (SD TX, Houston Div. 12/2/10) Plaintiffs  state that the *Durrenberger* court concluded that "written conversation 'is qualitatively different' from communication via assistance of other auxiliary aid …."  But that is simply not what the court said. At issue in the case, the facts of which are in no way similar to those of plaintiffs in this case, was whether an inmate could hear conversations with his visitors over the telephones set up for such purposes, or whether other accommodations should be provided.  In granting in part the plaintiff's motion for summary judgment, the court found that the defendant had failed to raise a genuine issue of material fact for trial regarding the sufficiency of the accommodations provided to plaintiff.  The court stated in its opinion that the defendant "[did] not counter" the plaintiff's contentions that written communication and telephonic communication from the inmate day room is qualitatively different from in-person visitation and constitute services and/or programs that differ from visitation.  *Durrenberger*, 757 F Supp. 2d 640, 654.  But the court itself made no conclusion of law regarding the nature of written communication vis-à-vis telephonic communication or communication via assistance of other auxiliary aid *in general*.  It merely made an observation that the defendant had failed to carry its burden in the specific circumstances of that case. Thus, *Durrenberger* decision provides no authority for this Court in this case to find that plaintiffs herein are entitled to summary judgment as a matter of law.

Finally, the *Pierce, McBride, Clarkson and Chisolm* cases are district court cases from other states and do not stand for a particular proposition of law, but rather reflect those court's judgments based on the facts presented in those cases.

III.   CONCLUSION

Plaintiffs have not proved that they are entitled to judgment as a matter of law in this highly disputed, fact-intensive case.  Further, they have presented no evidence that the remedies they seek are reasonable, feasible, or appropriate under law. Their motion should be denied.

Respectfully submitted:

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:  /s/ *Patricia H.Wilton*
PATRICIA H. WILTON #18049
Assistant Attorney General
Louisiana Department of Justice
Civil Division
P. O.  Box 94005
Baton Rouge, Louisiana 70804-9005
Tel:  (225) 326-6000 Fax:  (225) 326-6098
wiltonp@ag.louisiana.gov

***Counsel for Defendants***

**CERTIFICATE**

I certify that the foregoing was filed using the court's CM/ECF system on April 25, 2018, and that notice of filing will be send electronically to all counsel of record.

_____ /s Patricia H. Wilton_____
Patricia H. Wilton