## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LAWRENCE LEVY, CEDRIC HAMMOND, BRADLEY CASTO, individually and on behalf of all others similarly situated, | * * * |
| Plaintiffs, | * |
| | * |
| v. | * NO. 16-cv-542-JWD-EWD |
| LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, JAMES LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, | * * * * |
| Defendants. | * |

### STIPULATION AND ORDER

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), the Parties, by and through their undersigned counsel, hereby give notice that the Parties have: (1) reached a settlement in the above-captioned caption as reflected in the Settlement Agreement attached as Exhibit A hereto; and (2) agreed to voluntarily dismiss the above-captioned action, both of which are contingent upon the Court entering this Stipulation and Order and which shall serve to retain jurisdiction of this action for the limited purpose of enforcing the Settlement Agreement.

1

IN WITNESS WHEREOF, the Parties have executed this Stipulation on the dates set forth below.

**FOR PLAINTIFFS**

Dated this 23 day of MAY, 2019.

By: _____
Russell L. Hirschhorn
Russell T. Gorkin
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
rhirschhorn@proskauer.com
rgorkin@proskauer.com

Ronald Lospennato
Laura Thornton Stratton
Advocacy Center
8325 Oak Street
New Orleans, LA 70118
(504) 522-2337
rlospennato@advocacyla.org
lthornton@advocacyla.org

Phil Fornaci
Washington Lawyers' Committee
For Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
(202) 319-1000
phil_fornaci@washlaw.org

**FOR DEFENDANTS**

Dated this 23rd day of May, 2019.

By: _____
Patricia H. Wilton
Assistant Attorney General
Louisiana Department of Justice
Civil Division
P. O. Box 94005
Baton Rouge, LA 70804-9005
(225) 326-6006
wiltonp@ag.louisiana.gov

Jonathan Vining
General Counsel
Susan Wall Griffin
Attorney for the Secretary
Department of Public Safety & Corrections
P.O. Box 94304, Capitol Station
Baton Rouge, LA 70804-9304
(225) 342-6743
JVining@corrections.state.la.us
sgriffin@corrections.state.la.us

The Court retains jurisdiction of this action for the limited purpose of enforcing the Settlement Agreement. The action is otherwise dismissed and the Clerk is directed to close the docket.

So Ordered: _____   Date: 5/28/2019

**EXHIBIT A**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LAWRENCE LEVY, CEDRIC HAMMOND, \
BRADLEY CASTO, individually and on behalf of \
all others similarly situated,

   Plaintiffs,

v.

LOUISIANA DEPARTMENT OF PUBLIC \
SAFETY AND CORRECTIONS, JAMES \
LEBLANC, SECRETARY OF THE LOUISIANA \
DEPARTMENT OF PUBLIC SAFETY AND \
CORRECTIONS,

   Defendants.

NO. 16-cv-542-JWD-EWD

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT is entered into by and between Plaintiffs and Defendants. Capitalized terms and phrases have the meanings provided in Section 1 below or as specified elsewhere in this Settlement Agreement.

**1. DEFINITIONS**

1.1. **"Action"** means *Levy et al. v. Louisiana Department of Public Safety & Corrections, et al.*, No. 16-cv-542-JWD-EWD, an action pending in the United States District Court for the Middle District of Louisiana.

1.2. **"ADA"** means Title II of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq*.

1.3. **"Adverse Action"** means any decision made by an agent of the Louisiana Department of Public Safety and Corrections that has the potential to result in re-incarceration, additional probation restrictions or an extension of the probation period for the Affected Individual.

1.4. **"Affected Individuals"** means all current and future probationers and parolees who are deaf or hard of hearing and who are or will be under the control and supervision of the Louisiana Department of Public Safety and Corrections.

1.5. **"ASL"** means American Sign Language.

1.6. **"Auxiliary Aids and Services"** means qualified sign language or oral interpreters, notetakers, transcription services, written materials, telephone handset amplifiers, assistive

listening devices, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDDs), videotext displays, or other effective methods of making aurally delivered materials available to individuals who are deaf or hard of hearing. *See* Docket No. 37.

1.7. **"Claim"** means any and all manner of claims, actions, causes of actions, potential actions, suits, controversies, costs, damages, losses, obligations, liabilities, judgments, and demands whatsoever, known or unknown, suspected or unsuspected, accrued or unaccrued, whether class, individual, or otherwise, arising under the laws, regulations, or common law of the United States of America, any state or political subdivision thereof, or any foreign country or jurisdiction, in law, in contract, or in equity, and regardless of legal theory.

1.8. **"Certified Interpreter"** means a person who has achieved a passing score from one of the psychometrically sound, nationally recognized tests measuring proficiency in the interpretation of ASL. As of the Effective Date, nationally recognized ASL interpretation exams include the Educational Interpreter Performance Assessment (EIPA), the Board of Evaluation Interpreters (BEI), and/or the Registry of Interpreters for the Deaf (RID). A Certified Interpreter must maintain his or her certification as required by the certifying organization; failure to maintain certification means that the person is no longer deemed to be a Certified Interpreter.

1.9. **"Communication Assessment"** means an evaluation by a qualified individual of the communication needs of an Affected Individual to facilitate Effective Communication with deaf or hard of hearing individuals, and a determination of the Auxiliary Aids and Services necessary to meet those needs. The Communication Assessment, completed in consultation with the Affected Individual, will include an evaluation of the Affected Individual's literacy in written English as well as his or her ability to communicate effectively via ASL and VRI.

1.10. **"Complaint"** means the Class Action Complaint filed in this Action on August 16, 2016.

1.11. **"Court"** means the United States District Court for the Middle District of Louisiana.

1.12. **"Defendants"** means the Louisiana Department of Public Safety and Corrections, and its Secretary, James LeBlanc.

1.13. **"Defendants' Released Claims"** means any and all Claims, including unknown claims that Defendants asserted, or could have asserted, against the Plaintiffs' Releasees that arise out of or relate in any way to the institution, prosecution or settlement of the Action, except for claims relating to the enforcement of this Settlement Agreement.

1.14. **"Defendants' Releasees"** means Defendants named in the Complaint and any and all of their related entities, including, without limitation, any and all of their past or present parents, subsidiaries, affiliates, predecessors, or successors, successors-in-interest, as well as any and all of their current or former officers, directors, employees, associates, members of their immediate families, agents or other persons acting on their behalf, underwriters, insurers, reinsurers, attorneys, advisors, financial advisors, publicists, independent certified public accountants, auditors, accountants, assigns, creditors, administrators, heirs, estates or legal representatives.

1.15. **"Effective Communication"** means communication with persons with disabilities that is substantially as effective as communication with others. Effective Communication is achieved by furnishing appropriate Auxiliary Aids and Services where necessary to afford qualified individuals with disabilities an equal opportunity to participate in or benefit from the services, programs, or activities of the LDPSC.

1.16. **"Effective Date"** means the date on which the Court enters the Agreement and Order of Dismissal.

1.17 **"Field Visit"** means unscheduled face to face contact with the offender at his/her residence, employment, or other location outside of the designated office."

1.18. **"High Risk Interaction"** means proceedings that impact the freedom or sentence of an Affected Individual, including criminal investigations and internal investigations that could result in the filing of criminal charges or revocation hearings.

1.18. **"Intake Meeting"** means the initial meeting between an Affected Individual and LDPSC during which the terms and conditions of probation and parole are explained by LDPSC to the Affected Individual and a Communication Assessment is conducted.

1.19. **"LDPSC"** means Louisiana Department of Public Safety and Corrections and its Secretary, employees, volunteers, and independent contractors, including, without limitation, probation and parole officers, and any other administrative personnel, who have or are likely to have direct contact with the Affected Individuals.

1.20. **"Parties"** means Plaintiffs and Defendants.

1.21. **"Plaintiffs"** means Lawrence Levy, Cedric Hammond, and Bradley Casto.

1.22. **"Plaintiffs' Released Claims"** means any and all manner of Claims, including unknown claims that Plaintiffs asserted in the Action or could have asserted in any forum, that arise out of or are based upon, in whole or in part, directly or indirectly, any allegations, transactions, facts, matters, occurrences, representations, actions, omissions, failures to act, statements or disclosures involved, set forth or referred to in the Complaint filed in this Action. Notwithstanding the foregoing, claims to enforce the Settlement Agreement and claims for compensatory or punitive damages related thereto are not included in this definition of Plaintiffs' Released Claims.

1.23. **"Plaintiffs' Releasees"** means Plaintiffs, and any and all of their related parties, including, without limitation, any and all members of their immediate families, agents or other persons acting on their behalf, attorneys, advisors, financial advisors, accountants, assigns, creditors, heirs, estates and legal representatives.

1.24. **"Qualified Interpreter"** means a person who has passed a psychometrically sound, nationally recognized test of interpreter proficiency and who maintains such certification as required by the certifying body, and is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary, with the Affected Individual for whom the interpreter is interpreting, using any necessary specialized vocabulary. *See* 28 C.F.R. §35.104.

1.25.  **"Rehabilitation Act"** means Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

1.26.  **"Scheduled Encounter"** means any interaction between an Affected Individual and LDPSC that is scheduled by either party. Scheduled Encounters do not include Field Visits.

1.27.  **"Settlement Agreement"** means this Settlement Agreement and Release between Plaintiffs and Defendants.

1.28.  **"Unscheduled Encounter"** means any interaction between an Affected Individual and LDPSC that was not scheduled by either party. Field Visits are Unscheduled Encounters.

1.29.  **"Video Remote Interpreting"** or **"VRI"** means a video-telecommunication interpreting service, which uses Qualified Interpreters, is delivered over a high-speed Internet or cellular connection, and complies with all applicable legal requirements. *See* 28 C.F.R. § 35.160(d).

## 2. RECITALS

2.1.  On August 16, 2016, Plaintiffs filed the Complaint in this Action alleging that Defendants violated the ADA and the Rehabilitation Act because: (i) Qualified Interpreters were not present during the explanation to one or more of the Plaintiffs of the terms and conditions of their probation or parole and, as a consequence, Plaintiffs were released with no meaningful explanation of the terms and conditions of their probation or parole, and no understanding of their obligations; (ii) Qualified Interpreters were not present during Plaintiffs' home and office visits with their parole and probation officers even though it is mandatory for such visits to occur; and (iii) Qualified Interpreters and/or the necessary Auxiliary Aids and Services were not provided during classes or at treatment programs that Affected Individuals are required or are permitted to participate in, which precludes Plaintiffs from participating meaningfully in those classes.

2.2.  Defendants disputed the allegations in the Complaint and vigorously defended the lawsuit. Defendants maintain that their actions were reasonable and lawful at all times.

2.3.  Plaintiffs have conducted extensive discovery, including, the review of documents produced by Defendants, taking deposition of testimony of LDPSC and several of its employees and/or contractors, and engaging in expert discovery.

2.4.  Following the close of discovery, Plaintiffs moved for summary judgment and, on March 4, 2019, the Court denied that motion.

2.5.  The Parties now seek resolution of the Action and to settle it with finality, thereby avoiding the risk, expense, inconvenience, burden, distraction and diversion of personnel and resources, and uncertainty of outcome that is inherent in any litigation, that are associated with the Action.

2.6.  The Parties have thus reached this Settlement Agreement by and through their respective counsel on the terms and conditions set forth herein.

### 3. COMMUNICATION ASSESSMENTS

LDPSC shall arrange for a Communication Assessment to be conducted at the initial Intake Meeting with an Affected Individual. The Communication Assessment will be used to determine whether and to what extent the Affected Individual requires the assistance of a Qualified, Certified Sign Language Interpreter or other reasonable accommodation to communicate effectively in his or her interactions with LDPSC. If an Affected Individual appears for an Intake Meeting on an unscheduled basis, LDPSC will reschedule the Intake Meeting until the Communication Assessment can be conducted. After the initial Communication Assessment, LDPSC agrees to conduct an annual review of an Affected Individual's communication assessment to determine if there have been any material changes to an Affected Individual's need for interpreters or other reasonable accommodations for so long as the Affected Individual is under LDSPC supervision.

### 4. PROVISION OF QUALIFIED INTERPRETERS

4.1. LDPSC shall provide live, in-person Qualified, Certified Sign Language Interpreters to Affected Individuals at all Intake Meetings.

4.2. LDPSC shall provide a Qualified, Certified Sign Language Interpreter to an Affected Individual who requires an interpreter for effective communication (as determined by the Communication Assessment) at all Scheduled Encounters, either in-person or by VRI.

4.3. LDPSC need not provide an interpreter to Affected Individuals at Unscheduled Encounters, except as otherwise provided by law.

4.4. If an Unscheduled Encounter becomes a High Risk Interaction, LDPSC shall provide a Qualified, Certified Interpreter, either in-person or by VRI to any Affected Individual who requires the assistance of a Qualified, Certified Sign Language Interpreter at the earliest practicable time, but in no event longer than twelve (12) hours, except in extraordinary circumstances. Nothing in this clause shall be construed to waive an Affected Individual's Fourth, Fifth, or Fourteenth Amendment rights.

4.5. Defendants shall ensure that all vendors providing classes or treatment programs to Affected Individuals that are required as a condition of their probation or parole provide Qualified, Certified Sign Language Interpreters either in-person or by VRI.

### 5. RECORDS RETENTION

5.1. Defendants shall maintain Settlement Compliance Documentation in accordance with the records retention schedule mandated by the Department and the Louisiana Secretary of State and to furnish same upon request in accordance with Louisiana Public Records Law, La. R.S. 44:1, *et seq*.

5.2. For purposes of this Section 5, Settlement Compliance Documentation means documentation demonstrating fulfillment of the terms of this Settlement Agreement, including, at a minimum:

    5.2.1.    the names and contact information of Affected Individuals, their assigned probation and parole officers;

    5.2.2.    requests for auxiliary aids and services, the types provided, refusals thereof by an Affected Individual, and grievances related to the provision of auxiliary aids and services;

    5.2.3.    records documenting Communication Assessments performed by LDPSC on Affected Individuals;

    5.2.4.    records documenting certification and certification maintenance of interpreters; and

    5.2.5.    records documenting the provision of Qualified, Certified Sign Language Interpreters to an Affected Individual, including the provision of an interpreter to an Affected Individual as a result of any Unscheduled Encounter that became a High Risk Interaction.

To the extent any of the documents described above would be exempt from the Public Records Law, Defendants agree to furnish these documents to the Advocacy Center on request no more frequently than semi-annually, subject to a confidentiality agreement.

## 6. TRAINING

6.1    Defendants agree to continue to provide annual training to its officers, employees, and agents on providing effective communication to Affected Individuals.

## 7. GRIEVANCE PROCEDURE

7.1.    The existing ADA coordinator at each LDSPC district office shall serve as a representative of LDPSC who will be responsible for responding to grievances related to or arising from this Settlement Agreement.

7.2.    Should an Affected Individual have a grievance concerning an issue addressed by this Settlement Agreement, the designated individual at LDSPC shall reasonably investigate that grievance. The designated individual at LDSPC shall explain, with the assistance of a Qualified, Certified Sign Language Interpreter (if one is appropriate and necessary pursuant to the Affected Individual's Communication Assessment) within fourteen (14) days to the Affected Individual what, if any, action will be taken in response to the grievance.

7.3.    The Grievance Procedure shall be explained to each Affected Individual at his or her Intake Meeting, or if already a probationer or parolee at the time the Parties enter into this Settlement Agreement, at the probationer or parolee's next scheduled office visit. The Grievance Procedure will be explained in the presence, either in person by remotely, of a Qualified, Certified Sign Language Interpreter.

8. **DISMISSAL**

Promptly after this Agreement is fully executed, Plaintiffs will file a Stipulation and Order dismissing the Action in the form attached hereto as Exhibit A. The Stipulation and Order is conditioned upon the Middle District of Louisiana retaining jurisdiction of the settlement agreement.

9. **RELEASES**

9.1. Release of Defendants' Releasees by Plaintiffs. Upon the Effective Date of the Settlement Agreement, Plaintiffs, absolutely and unconditionally release and forever discharge the Defendants' Releasees from any and all of Plaintiffs' Released Claims that Plaintiffs directly, indirectly, derivatively or in any other capacity ever had, now have or hereafter may have. Notwithstanding the foregoing, Plaintiffs do not release the Defendants' Releasees from claims to enforce the Settlement Agreement.

9.2. Release of the Plaintiffs' Releasees by Defendants. Upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge Plaintiffs' Releasees and Plaintiffs' Counsel from any and all of Defendants' Released Claims.

10. **NO ADMISSION OF LIABILITY**

The Parties understand and agree that this Settlement Agreement embodies a compromise and settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding of wrongdoing by any of the Defendants, or give rise to any inference of wrongdoing or admission of wrongdoing or liability in this or any other proceeding. The Settlement Agreement made hereunder is made in compromise of disputed claims and is not an admission of any liability of any kind, whether legal or factual. Moreover, Defendants specifically deny any and all such liability or wrongdoing. Neither the fact nor the terms of the Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Settlement Agreement.

11. **RESOLUTION OF DISPUTES**

The Parties will work in good faith to resolve any violations alleged through the Grievance Procedure. If, after thirty (30) days, the Parties are unable to resolve a dispute related to a violation alleged under the Grievance Procedure, they shall present their dispute to the court.

12. **ATTORNEYS' FEES AND EXPENSES**

In settlement of all claims for attorneys' fees and costs, any disbursements and expenses, including expert fees, incurred on behalf of Plaintiffs in this litigation up to and including the Effective Date, the Parties agree that within thirty (30) days of the Effective Date of this Settlement Agreement, Defendants shall pay Four Hundred Twenty-Five Thousand Dollars ($425,000) as directed by Plaintiffs' counsel.

## 13.  MISCELLANEOUS PROVISIONS

13.1. *Continuing Jurisdiction.* This Settlement Agreement is expressly conditioned upon the Court's entering an order requiring the parties to comply with its terms, and retaining jurisdiction of the Action for the purpose of resolving any dispute between Affected Individuals and the Defendants that may arise regarding this Settlement Agreement, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability or termination of the Settlement Agreement. The Court shall retain jurisdiction of the Action for the purpose of resolving any dispute between Affected Individuals and Defendants.

13.2. *Governing Law.* This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Louisiana State Law will apply without regard to conflict of law principles.

13.3. *Severability.* The provisions of this Settlement Agreement are not severable.

13.4. *Amendment.* This Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties.

13.5. *Waiver.* The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

13.6. *Construction.* None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

13.7. *Principles of Interpretation.* The following principles of interpretation apply to this Settlement Agreement:

> 13.7.1. *Headings.* The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.
>
> 13.7.2. *Singular and Plural.* Definitions apply to the singular and plural forms of each term defined.
>
> 13.7.3. *Terms of Inclusion.* Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

13.8. *Survival.* All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of this Settlement Agreement.

13.9.   *Notices.*   Any notice, demand or other communication under this Settlement Agreement shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, delivered by reputable express overnight courier, or sent by email transmission, with confirmation of receipt:

    IF TO PLAINTIFFS:

        Russell L. Hirschhorn
        Proskauer Rose LLP
        Eleven Times Square
        New York, NY 10036
        (212) 969-3000
        rhirschhorn@proskauer.com
        rgorkin@proskauer.com

        Ronald K. Lospennato
        Laura Thornton Stratton
        Advocacy Center
        8325 Oak Street
        New Orleans, LA 70118
        (504) 522-2337
        rlospennato@advocacyla.org
        lthornton@advocacyla.org

        Phil Fornaci
        Washington Lawyers' Committee
        For Civil Rights and Urban Affairs
        11 Dupont Circle, NW
        Suite 400
        Washington, DC 20036
        (202) 319-1000
        phil_fornaci@washlaw.org

    IF TO DEFENDANTS:

        Jonathan Vining
        General Counsel
        Susan Wall Griffin
        Attorney for the Secretary
        Department of Public Safety & Corrections
        P.O. Box 94304, Capitol Station
        Baton Rouge, LA 70804-9304
        (225) 342-6743
        JVining@corrections.state.la.us
        sgriffin@corrections.state.la.us

Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

13.10. *Entire Agreement.* This Settlement Agreement contains the entire agreement among the Parties relating to this Settlement. It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties. No representations, agreements, understandings, or inducements (whether written, unwritten, verbal or otherwise) shall affect the construction or enforcement of this Settlement Agreement (including all Claims released herein), it being agreed that the rights of the Parties hereto against any opposing party hereto shall be governed exclusively by this Settlement Agreement.

13.11. *Counterparts.* This Settlement Agreement may be executed by exchange of faxed or scanned executed signature pages, and any signature transmitted by facsimile or by email attachment for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

13.12. *Binding Effect.* This Settlement Agreement binds and inures to the benefit of the Parties hereto, their assigns, heirs, administrators, executors and Successors-in-Interest.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

**FOR PLAINTIFFS**

Dated this 25 day of May, 2019.

By: _____
Russell L. Hirschhorn
Russell T. Gorkin
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
rhirschhorn@proskauer.com
rgorkin@proskauer.com

Rachel T. Gulotta
Samantha Shear
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130
(504) 310-4088
rgulotta@proskauer.com
sshear@proskauer.com

Ronald Lospennato
Laura Thornton Stratton
Advocacy Center
8325 Oak Street
New Orleans, LA 70118
(504) 522-2337
rlospennato@advocacyla.org
lthornton@advocacyla.org

Phil Fornaci
Washington Lawyers' Committee
For Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
(202) 319-1000
phil_fornaci@washlaw.org

**FOR DEFENDANTS**

Dated this 2nd day of May, 2019.

By: /s/ Patricia H. Wilton

Patricia H. Wilton
Assistant Attorney General
Louisiana Department of Justice
Civil Division
P. O. Box 94005
Baton Rouge, LA 70804-9005
(225) 326-6006
wiltonp@ag.louisiana.gov

Susan Wall Griffin
Attorney for the Secretary
Department of Public Safety & Corrections
P.O. Box 94304, Capitol Station
Baton Rouge, LA 70804-9304
(225) 342-6743
sgriffin@corrections.state.la.us